UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | Bankruptcy Case No. 18 B 28055 |
| FAYYAZ KARIM | ) | Chapter 7 |
| LISA A. KARIM, | ) | Honorable Janet S. Baer |
| Debtors. | ) | |

## MEMORANDUM OPINION

This matter is before the Court for ruling on the motion for entry of an order of contempt filed by debtor Fayyaz Karim ("Karim") against the Illinois Department of Revenue ("IDOR").[1] Karim alleges that IDOR violated the discharge injunction by attempting to collect a debt that had been discharged. He seeks an order finding IDOR in contempt and awarding monetary sanctions. IDOR maintains that it did not violate the discharge injunction because the debt at issue is for a nondischargeable penalty under 11 U.S.C. § 523(a)(7).[2] For the reasons set forth below, the Court finds that the penalty at issue is a nondischargeable tax penalty pursuant to § 523(a)(7) and that IDOR therefore did not violate the discharge injunction by attempting to pursue collection of that penalty. As such, Karim's motion for entry of an order of contempt will be denied.

## JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. This is a core proceeding under 28 U.S.C. § 157(b)(2)(I).

---

[1] It is undisputed that Karim's co-filing spouse, Lisa A. Karim, is not liable for the debt at issue.

[2] Unless otherwise noted, all statutory references are to the Bankruptcy Code, 11 U.S.C. §§ 101 to 1532.

## BACKGROUND[3]

On August 13, 2015, Chicago Police Department officers and IDOR Criminal Investigations Division agents raided Karim's residence—as well as another location that he leased—and confiscated 10,023 packages of cigarettes. (Bankr. Case No. 18 B 28055, Docket No. 25 at 2.[4]) The cigarettes were considered "contraband" because the packages did not bear tax stamps required by the Illinois Cigarette Tax Act (the "CTA"), 35 ILCS 130/1 *et seq.* (*Id.* at 2-3.) As a result, the State criminally charged Karim with possession of contraband cigarettes. (*Id.* at 2.) On April 26, 2016, Karim pleaded guilty to the charge and received a sentence of two years' probation. (*Id.*, Ex. A.)

Soon thereafter, IDOR initiated an administrative proceeding by mailing Karim a notice of an initial status conference that was to take place on June 16, 2016. (*Id.*, Ex. B.) The notice informed Karim that the purpose of the hearing was to assess penalties under the CTA for possession of contraband cigarettes. (*Id.*) That administrative proceeding was to culminate in an evidentiary hearing scheduled for May 4, 2017; however, a few days before the hearing, on May 1, 2017, Karim informed IDOR by email that he would be withdrawing his request for a hearing and would no longer be contesting the penalty. (*Id.* at 3 & Ex. C.) Thereafter, on June 13, 2017, an agreed order of dismissal was entered by the administrative law judge (the "ALJ") holding Karim liable for $248,975 in penalties. (*Id.*, Ex. D.)

---

[3] The undisputed facts set forth in this section are gleaned from the parties' filings, the exhibits to those filings, and the Court's docket.

[4] Unless otherwise noted, all docket references are to Bankr. Case No. 18 B 28055.

2

On March 3, 2017, during the pendency of the administrative proceeding,[5] Karim filed for chapter 13 bankruptcy relief. (Bankr. Case No. 17 B 06548, Docket No. 1.) He listed IDOR as a general unsecured creditor in the schedules filed with his petition. (*Id.* at 24.) The case was later converted to chapter 11 and then eventually dismissed on June 7, 2018. (*Id.*, Docket Nos. 51 & 74.)

Several months later, on October 5, 2018, Karim filed another bankruptcy petition, this time commencing the above-captioned chapter 7 case. (Docket No. 1.) Karim again listed IDOR as a general unsecured creditor in his schedules. (*Id.* at 24.) After the chapter 7 trustee filed a no-asset report, Karim received a discharge, and the Clerk of Court closed the case. (Docket Nos. 11, 17 & 19.)

Within weeks of the conclusion of Karim's chapter 7 bankruptcy case, IDOR mailed him a demand for payment and a notice of intent to file a lien for non-payment of the contraband cigarette penalty debt. (Docket No. 25 at 3.) Karim's attorney responded with a letter advising IDOR that the payment demand and lien notice were attempts to collect a debt that had been discharged in bankruptcy and that, by taking these actions, IDOR had violated the discharge injunction. (Docket No. 21 at 3-4.)

After the parties failed to reach a resolution, Karim filed two motions: one to reopen his bankruptcy case and the other seeking entry of an order of contempt against IDOR. (Docket Nos. 20 & 21.) The Court granted the motion to reopen the case and entered an order to show cause as

---

[5] That the administrative proceeding continued despite Karim's chapter 13 filing is undisputed. Karim now argues—for the limited purpose of responding to IDOR's request that the Court exercise its equitable powers—that IDOR violated the automatic stay by proceeding to obtain the penalty judgment during the pendency of that chapter 13 case. (Docket No. 36 at 4.) IDOR also briefly addresses this issue in a footnote in its sur-response, alleging that its actions were not a violation of the automatic stay because, *inter alia*, they were an exercise of police and regulatory powers under § 364(b)(4). (Docket No. 35 at 5 n.4.) The validity of the administrative proceeding, however, is not before the Court, and a review of the docket in Karim's prior bankruptcy case shows that no formal objection to the alleged stay violation was ever filed.

3

to why IDOR should not be held in contempt. (Docket Nos. 22 & 23.) After extensive briefing by the parties, the Court took the matter under advisement. Having reviewed the various filings and considered the parties' arguments, the Court is now ready to rule.

## APPLICABLE STATUTORY PROVISIONS

Section 727(a) is the general discharge provision of the Bankruptcy Code. 11 U.S.C. § 727. According to § 727(b), "a discharge under subsection (a) of this section discharges the debtor from all debts that arose before the date of the order for relief under this chapter." 11 U.S.C. § 727(b). Explicitly excepted from the § 727(a) discharge, however, are those debts listed in § 523. The provision at issue in this matter, § 523(a)(7), excepts from discharge debts for certain penalties. 11 U.S.C. § 523(a)(7). Specifically, § 523(a)(7) provides:

> (a) A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt—
>
> \*\*\*
>
> (7) to the extent such debt is for a fine, penalty, or forfeiture payable to and for the benefit of a governmental unit, and is not compensation for actual pecuniary loss, *other than a tax penalty*—
>
>> (A) relating to a tax of a kind not specified in paragraph (1) of this subsection; or
>>
>> (B) *imposed with respect to a transaction or event that occurred before three years before the date of the filing of the petition*[.]

11 U.S.C. § 523(a)(7) (emphasis added). The general requirements of § 523(a)(7)—that the debt is (a) for a fine, penalty, or forfeiture, (b) payable to and for the benefit of a governmental unit, and (c) not compensation for actual pecuniary loss—are not in question here. (*See* Docket No. 25 at 4; Docket No. 29 at 1-3.) Rather, the parties' primary dispute is whether penalties imposed under §§ 18b and 18c of the CTA are tax penalties for purposes of § 523(a)(7). (*Id.*) If the CTA

4

penalties are tax penalties, then the relevant provision is § 523(a)(7)(B), because subsection (A), by its terms, concerns only those tax penalties that are related to taxes specified in § 523(a)(1) and is thus wholly inapplicable here.[6] For the penalty at issue to be nondischargeable under § 523(a)(7)(B), it must have been "imposed with respect to a transaction or event" that occurred less than three years before the petition date.

## DISCUSSION

Karim seeks an order holding IDOR in contempt for violating the discharge injunction because it attempted to collect the purportedly discharged contraband cigarette penalty debt. According to Karim, although § 523(a)(7) excepts certain penalty debts from discharge, subsection (B) of the statute creates an exception to the exception by providing for the discharge of tax penalty debts that are more than three years old at the time a bankruptcy petition is filed. Because the "transaction or event" that the penalty is being "imposed with respect to" was the seizure of the contraband cigarettes, Karim argues, the penalty arose more than three years before the filing of his chapter 7 petition and is therefore dischargeable.

IDOR maintains that the contraband cigarette penalty is not a tax penalty and that Karim's debt is thus nondischargeable regardless of its age. If the contraband cigarette penalty is considered a tax penalty, however, IDOR argues that Karim's debt is still nondischargeable either because the three-year lookback period for tax penalties should have tolled during his prior bankruptcy case or because the "transaction or event" that the penalty is being "imposed with respect to" took place within three years of his chapter 7 bankruptcy filing.

---

[6] Because the statute is written in the disjunctive, a tax penalty may be dischargeable under subsection (B) although it is not related to a dischargeable tax in accordance with subsection (A). *See, e.g., Roberts v. United States (In re Roberts)*, 906 F.2d 1440, 1442-45 (10th Cir. 1990). *See generally United States v. Bush*, No. 1:16-cv-00903-LJM-DML, 2016 WL 6818517 (S.D. Ind. Nov. 18, 2016) (discussing the "*Cassidy* issue," named for a line of Seventh Circuit cases that held that § 523(a)(7) was to be read in the conjunctive but that later found that statement to be dictum).

5

The threshold issue, then, is whether the contraband cigarette penalty is a "tax penalty" for purposes of § 523(a)(7). If it is not a tax penalty, then the Court need not reach the timing issue because the debt would be nondischargeable regardless of its age. If the penalty is a tax penalty, however, then § 523(a)(7)(B) requires the Court to determine what particular "transaction or event" the penalty was "imposed with respect to" and whether that transaction or event occurred within the three-year lookback period immediately prior to Karim's chapter 7 bankruptcy filing.

For the reasons that follow, the Court finds that the penalty at issue is a tax penalty under § 523(a)(7) and that the relevant "transaction or event" was the entry of the order of the ALJ on June 13, 2017. As such, the Court need not determine whether the three-year lookback period of § 523(a)(7)(B) is subject to tolling, equitable or otherwise. Nor must the Court rule on the issue of sanctions, as IDOR's collection actions following Karim's chapter 7 discharge were not in violation of the discharge injunction because its tax penalty debt was nondischargeable.

**1.    Penalties Imposed Under §§ 18b and 18c of the CTA Are Tax Penalties for Purposes of § 523(a)(7).**

Karim's debt to IDOR is for penalties imposed pursuant to the CTA. Under that statute, a tax is imposed on any person engaged in business as a retailer of cigarettes in Illinois. 35 ILCS 130/2(a). Payment of the tax is evidenced by a stamp affixed to each package of cigarettes. 35 ILCS 130/2(b) & 3. Cigarettes that do not bear the required tax stamps are defined as "contraband cigarettes." 35 ILCS 130/1.

The CTA authorizes the assessment of various penalties against individuals found to be in possession of contraband cigarettes. Section 24(d) of the statute provides that it is a Class 3 felony for any person to possess more than one thousand packages of contraband cigarettes. 35 ILCS 130/24(d). In addition, § 18c provides that anyone in possession of more than ten but fewer than one hundred packages of contraband cigarettes must pay a penalty of $15 per package, and § 18b

6

provides that anyone in possession of more than one hundred packages of contraband cigarettes must pay a penalty of $25 per package. 35 ILCS 130/18b & 18c. Sections 18b and 18c also each state that the penalty is payable to IDOR "for deposit in the Tax Compliance and Administration Fund" and that the penalty is "in addition to the taxes imposed by" the CTA. 35 ILCS 130/18b & 18c. The CTA further provides that, whenever contraband cigarettes are found in a person's possession, IDOR may, "in addition to the penalties imposed by Sections 18b and 18c . . . and any other civil or criminal penalties provided for in [the CTA], assess tax, penalty, and interest on the original packages of cigarettes." 35 ILCS 130/13.

Whether these CTA penalties are dischargeable, however, turns on the language of the Bankruptcy Code. "[I]nterpretation of the Bankruptcy Code starts 'where all such inquiries must begin: with the language of the statute itself.'" *Ransom v. FIA Card Servs., N.A.*, 562 U.S. 61, 69 (2011) (quoting *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241 (1989)). The Code defines neither the phrase "tax penalty" nor the words "tax" or "penalty." When the Code does not define words or phrases, the Court must "look to their ordinary meanings." *Lamar, Archer & Cofrin, LLP v. Appling*, 138 S. Ct. 1752, 1759 (2018). The word "tax" means "[a] charge, usu[ally] monetary, imposed by the government on persons, entities, transactions, or property to yield public revenue." Tax, *Black's Law Dictionary* (11th ed. 2019).[7] "Penalty," in turn, means "[p]unishment imposed on a wrongdoer, usu[ally] in the form of imprisonment or fine; esp[ecially], a sum of money exacted as punishment for either a wrong to the state or a civil wrong (as distinguished

---

[7] Other definitions of the word "tax" include "[a] compulsory contribution to the support of government, levied on persons, property, income, commodities, transactions, etc., now at fixed rates, mostly proportional to the amount on which the contribution is levied," Tax, *Oxford English Dictionary*, https://www.oed.com/view/Entry/198260 (last visited Jan. 16, 2020), and "a charge usually of money imposed by authority on persons or property for public purposes," Tax, *Merriam-Webster*, https://www.merriam-webster.com/dictionary/tax (last visited Jan. 16, 2020).

7

from compensation for the injured party's loss)." Penalty, *Black's Law Dictionary* (11th ed. 2019).[8] Although none of the commonly cited authorities define the phrase "tax penalty," the Seventh Circuit has broadly stated that the purpose of such a penalty is "to punish those who fail to abide by the taxing structure, and to deter those who might be inclined to avoid tax payment." *In re Virtual Network Servs. Corp.*, 902 F.2d 1246, 1250 (7th Cir. 1990).

Turning to case law for guidance, most courts that have interpreted § 523(a)(7) have not addressed whether the penalties at issue were "tax penalties."[9] Some cases are helpful, however, for the limited purpose of providing examples of penalties that are indisputably tax penalties. *See, e.g., In re McCarthy*, 553 B.R. 459, 465 (Bankr. D. Mass. 2016) (analyzing whether penalties imposed for filing late tax returns were discharged under § 523(a)(7)(B)); *In re Jansen*, 162 B.R. 530, 534 (Bankr. S.D. Ill. 1994) (finding that a penalty on tax owed under the Retailers' Occupation Tax Act was dischargeable pursuant to § 523(a)(7)(B)); *Torres v. Ill. Dep't of Rev. (In re Torres)*, 143 B.R. 183, 184-87 (Bankr. N.D. Ill. 1992) (discharging debt for tax penalties imposed "for late filing" under various state tax laws). Other cases are helpful for the limited purpose of providing examples of penalties that do not fall under the category of a "tax penalty." *See, e.g., Nat. Res. & Envtl. Prot. Cabinet v. Seals*, 161 B.R. 615, 621 (W.D. Va. 1993) (concluding that § 523(a)(7)(B) did not apply to penalties for mining law violations); *People v. Hemingway (In re Hemingway)*, 39 B.R. 619, 621 (N.D.N.Y. 1983) (finding that an award of costs in civil

---

[8] Other definitions of the word "penalty" include "[l]iability to be punished or penalized, esp[ecially] in the event of failure to comply with a command, law, condition, etc.; risk of suffering punishment or loss," Penalty, *Oxford English Dictionary*, https://www.oed.com/view/Entry/139990 (last visited Jan. 16, 2020), and "the suffering in person, rights, or property that is annexed by law or judicial decision to the commission of a crime or public offense," Penalty, *Merriam-Webster*, https://www.merriam-webster.com/dictionary/penalty (last visited Jan. 16, 2020).

[9] Rather, the leading cases that have interpreted the § 523(a)(7) tax penalty exception addressed whether tax penalties relating to nondischargeable tax liabilities were dischargeable. *See, e.g., Roberts*, 906 F.2d at 1441; *Burns v. United States (In re Burns)*, 887 F.2d 1541, 1552 (11th Cir. 1989).

proceedings was not analogous to the imposition of a tax penalty generally dealt with under § 523(a)(7)(B)); *Kish v. Farmer (In re Kish)*, 238 B.R. 271, 277, 287 (Bankr. D.N.J. 1999) (determining that "a DMV surcharge . . . [was] not a tax penalty at all, since it [was] not based upon a tax liability, but rather upon a violation of motor vehicles laws" prohibiting the operation of a vehicle while under the influence, without liability insurance, and during a period of suspension); *In re Daugherty*, 25 B.R. 158, 160-61 (Bankr. E.D. Tenn. 1982) (holding that § 523(a)(7)(B) did not apply to a penalty imposed under a state environmental protection statute because it was a "non-tax penalty").

The most helpful cases have addressed the language of § 523(a)(7) insofar as it limits or expands the types of penalties that might be categorized as tax penalties. In *Roberts v. United States (In re Roberts)*, for example, the government argued that only tax penalties that are not computed by reference to a tax liability fall under § 523(a)(7)(B). 906 F.2d 1440, 1443 (10th Cir. 1990). In that case, the Tenth Circuit dismissed the government's argument, explaining as follows:

> The actual language simply does not stretch that far. Subsection (A) refers, not to penalties "computed by reference" to a dischargeable tax, but rather to any penalty "relating to" such a tax. The statutory language refers to the nature of the penalty rather than the method of computing it. Likewise, the language of subsection (B) does not lend itself to the limitation which the government seeks to impose on its application. Many tax penalties are "imposed with respect to a transaction or event" and are nevertheless *computed* by reference to a tax liability.

*Id.* at 1443-44. Similarly, in *In re Bush*, the government argued that "§ 523(a)(7)(A) addresses penalties relating to a tax and § 523(a)(7)(B) addresses penalties that do not relate to a tax, also called free-standing penalties." 549 B.R. 707, 711 (Bankr. S.D. Ind. 2016), *aff'd sub nom. United States v. Bush*, No. 1:16-cv-00903-LJM-DML, 2016 WL 6818517 (S.D. Ind. Nov. 18, 2016). The bankruptcy court acknowledged that the "IRS [was] right that § 523(a)(7)(B) could be applied to

a free-standing penalty." The court went on, however, to rule against the IRS for the following reason:

> [T]he crux of the IRS'[s] argument . . . is that § 523(a)(7)(B) can be applied to *only* free-standing penalties. Fatal to that argument is the fact that the plain language of § 523(a)(7)(B) is not so limiting. Understanding that multiple types of penalties could fall under § 523(a)(7)(B) does not create ambiguity in the statute. Rather, it recognizes that Congress used broad language such that free-standing penalties and other types of penalties could be dischargeable pursuant to § 523(a)(7)(B).

*Id.* The acknowledgement that a wide range of penalties might fall under the category of "tax penalties" for purposes of § 523(a)(7)(B) is particularly relevant here.

The penalties imposed in the above-cited cases, of course, are not perfectly analogous to those imposed under the CTA. Most of the penalties considered "tax penalties" by courts were imposed for the nonpayment or late filing of taxes. And most of the penalties not considered "tax penalties" were imposed for violations of laws that in no way relate to taxes. The penalties at issue in this matter do not fit squarely into one category or the other. Although the penalties here were imposed under a tax law, the CTA punishes a person for "*possessing or having possessed* contraband cigarettes," not for failing to pay taxes on those cigarettes. *See* 35 ILCS 130/18b & 18c (emphasis added). Possession, however, is only a means of identifying the violator of the statute. It is the fact that the cigarettes are contraband, not the act of possession, that is essential to the penalty. In this matter in particular, the cigarettes were considered contraband because Karim had not paid the required tax. The underlying purpose of the penalty, as it was applied here, was to punish the nonpayment of taxes.

Despite the fact that the source of authority for imposing the penalties is a tax statute and the fact that the penalties were imposed by the primary taxing body of the State of Illinois, IDOR

10

urges the Court to find that the penalties at issue are not "tax penalties." In support of its position, IDOR offers three arguments.

First, IDOR argues that penalties imposed under §§ 18b and 18c of the CTA are not "tax penalties" because they are imposed to punish certain conduct. This argument is without merit because all penalties are imposed to punish certain conduct.

Second, IDOR argues that the CTA penalties at issue cannot be "tax penalties" because they were "not imposed or calculated based on an existing tax liability of Karim under the CTA, nor [were they] imposed with respect to a taxable transaction or event." (Docket No. 25 at 5.) Neither of these arguments is supported by the statutory text of the Code or by case law. Specifically, nothing in the language of § 523(a)(7) limits the phrase "tax penalty" to a penalty calculated based on an existing tax liability or imposed with respect to a taxable transaction or event. *See* 11 U.S.C. § 523(a)(7). As to case law, the discussion of so-called "free-standing penalties" in *Bush* is particularly relevant here. In that case, the bankruptcy court recognized that the range of tax penalties that might fall under § 523(a)(7)(B) is broad. *See Bush*, 549 B.R. at 711. Thus, the phrase "tax penalty" encompasses both penalties that are indisputably tax penalties (e.g., for nonpayment of taxes or late filing of a return) and penalties that are free-standing because they do not relate to an existing tax liability or a taxable transaction or event. The penalties imposed by the CTA are a prime example of a free-standing tax penalty under § 523(a)(7)(B).

Finally, IDOR argues that the CTA penalties cannot be tax penalties because they are distinct from a separate tax penalty that is contemplated elsewhere in the statute. This argument also fails because it mischaracterizes § 13 of the CTA. The fact that § 13 authorizes the "assess[ment of] tax, penalty, and interest" on contraband cigarettes "in addition to the penalties imposed by Sections 18b and 18c" does not mean that penalties under §§ 18b and 18c are not "tax

11

penalties." 35 ILCS 130/13. By using the words "in addition to," § 13 of the CTA clarifies that there are two separate penalties: one related to the tax, if assessed, and the other imposed under §§ 18b and 18c for possession of cigarettes for which the tax has not been paid. The fact that they are separate does not mean that one is a tax penalty and the other is not.

Based on the foregoing, the Court holds that the penalties imposed against Karim under §§ 18b and 18c of the CTA are tax penalties for purposes of § 523(a)(7) of the Bankruptcy Code. A penalty for possession of cigarettes for which the required tax has not been paid falls within the ordinary meaning of "tax penalty," and the relevant case law supports that conclusion. Furthermore, nothing in the text of § 523(a)(7) limits the phrase "tax penalty" to exclude the free-standing penalties at issue in this matter. Having determined that the penalties here are tax penalties for purposes of § 523(a)(7), the Court next addresses whether the tax penalties assessed against Karim were discharged pursuant to § 523(a)(7)(B).[10]

---

[10] Having resolved the first issue by reference to other sources, a review of the legislative history of the phrase "tax penalty" in § 523(a)(7) is unnecessary in this matter. Indeed, some courts have warned against reliance on the statute's history. *See Burns*, 887 F.2d at 1551-52. An examination of the legislative history is useful, however, because it corroborates the Court's reading of the statute. The Joint Statement of the House of Representatives and the Senate, shedding light on the text of § 523(a)(7), explains, in pertinent part:

> The House amendment also adopts the Senate amendment provision limiting the nondischargeability of punitive tax penalties, that is, penalties other than those which represent collection of a principal amount of tax liability through the form of a "penalty." Under the House amendment, tax penalties which are basically punitive in nature are to be nondischargeable only if the penalty is computed by reference to a related tax liability which is nondischargeable or, if the amount of the penalty is not computed by reference to a tax liability, the transaction or event giving rise to the penalty occurred during the 3-year period ending on the date of the petition.

124 Cong. Rec. 32350, 32417 (1978) (statement of Rep. Edwards); 124 Cong. Rec. 33989, 34016 (1978) (statement of Sen. DeConcini).

2. **The Relevant "Transaction or Event" for Purposes of § 523(a)(7)(B) Was the June 13, 2017 Dismissal Order of the ALJ Determining Karim's Liability.**

Subsection (B) of § 523(a)(7) is an exception to the discharge exception that is § 523(a)(7). To clarify the way in which § 523(a)(7)(B) operates, the Court first examines the interplay between these nested provisions. The Eleventh Circuit Court of Appeals has succinctly deciphered this confusing array of provisions by explaining that:

> While the language of [§ 523(a)(7)] frames nondischargeable tax penalties as an exception to an exception to an exception, once the triple negative is taken into account the meaning of the provision gains clarity. A tax penalty is discharged [by subsection (A)] if the tax to which it relates is discharged (in the precise terms of the statute, not nondischargeable) or [by subsection (B)] if the transaction or event giving rise to the penalty occurred more than three years prior to the filing of the bankruptcy petition.

*Burns v. United States (In re Burns),* 887 F.2d 1541, 1544 (11th Cir. 1989). Subsections (A) and (B), then, provide for limited circumstances under which tax penalty debts may be discharged despite being otherwise excepted from discharge by § 523(a)(7). As the Court has previously stated, subsection (A)—dealing solely with tax penalties that relate to those nondischargeable taxes outlined in § 523(a)(1)—is wholly inapplicable here. It is subsection (B) that is the pertinent provision given the facts in this matter.

Nearly all of the briefing addressing § 523(a)(7)(B) here focused on whether the three-year lookback period was tolled during the pendency of Karim's chapter 13 bankruptcy case. Before the tolling issue is reached, however, the Court must determine whether the "transaction or event" giving rise to the penalty occurred within the three-year lookback period immediately preceding October 5, 2018, the petition date of this case. To do so requires another look at the language of the Bankruptcy Code.

13

As with "tax" and "penalty," "transaction or event" is not a defined term in the Code.[11] As a result, the ordinary meaning of the words governs. *Lamar, Archer & Cofrin, LLP*, 138 S. Ct. at 1759. A "transaction" generally refers to "[t]he act or an instance of conducting business or other dealings; esp[ecially] the formation, performance, or discharge of a contract," or "[s]omething performed or carried out; a business agreement or exchange." Transaction, *Black's Law Dictionary* (11th ed. 2019).[12] "Event"—a broad, general term—is defined as "[t]he outcome of an action or occurrence; a result, a consequence," or "[s]omething that happens or takes place, esp[ecially] something significant or noteworthy; an incident, an occurrence."[13] It is undisputed that the penalties assessed against Karim were not imposed because of any business deal or contract or because of the "exchange or transfer" of the cigarettes. Instead, the CTA penalties were imposed on Karim for "possessing or having possessed" cigarettes that were seized and later determined to be contraband under the CTA. *See* 35 ILCS 130/18b & 18c. As such, the operative term in the statute must be the more general term "event."

There are two plausible events with respect to which the tax penalty could have been imposed: (1) the seizure of the cigarettes, or (2) the entry of the order on June 13, 2017 determining Karim's liability under the CTA. Only if the relevant event were the seizure of the contraband cigarettes on August 13, 2015 would the issue of tolling arise. If instead the relevant event were the entry of the agreed order—which occurred much later, in June of 2017—then the tax penalty debt would be nondischargeable because that date occurred within the three-year lookback period.

---

[11] As other courts have noted, the term appears to have some connection to a section which ultimately was not enacted following a legislative compromise on § 523(a)(7). *In re Frary*, 117 B.R. 541, 548 (Bankr. D. Alaska 1990) (citing *Burns*, 887 F.2d at 1551 n.10).

[12] Other definitions of the word "transaction" similarly deal with commerce. *See, e.g.*, Transaction, *Merriam-Webster*, https://www.merriam-webster.com/dictionary/transaction (last visited Jan. 16, 2020) (defining "transaction" as "an exchange or transfer of goods, services, or funds").

[13] Event, *Oxford English Dictionary*, https://www.oed.com/view/Entry/65287 (last visited Jan. 16, 2020).

14

Because both events are facially plausible under the ordinary meaning of "event," the Court turns to case law and the statutory scheme of the CTA for guidance.

Virtually all courts that have interpreted § 523(a)(7)(B) have done so in the context of penalties assessed in conjunction with federal or state income taxes. *See, e.g., McKay v. United States*, 957 F.2d 689, 693 (9th Cir. 1992) (discharging civil fraud penalties assessed under the Internal Revenue Code (the "IRC") in connection with income taxes); *Burns*, 887 F.2d at 1544 (same); *United States v. Wilson*, Case No. 15-cv-01448-VC, 2016 WL 241416, at *6-7 (N.D. Cal. Jan. 21, 2016) (addressing failure-to-file and failure-to-pay penalties); *In re Allen*, 272 B.R. 913, 916 (Bankr. E.D. Va. 2002) (same). Penalties of this type tend to be imposed automatically upon the occurrence or non-occurrence of some event. *See* 26 U.S.C. § 6665(a). As a result, many cases omit a discussion of what the particular "transaction or event" giving rise to the penalty is. Other cases simply equate the imposition of the penalty with the relevant "transaction or event."

In *McCarthy*, the bankruptcy court grappled with the issue of whether penalties assessed under Massachusetts' state laws for the late payment of taxes and the late filing of tax returns were discharged under § 523(a)(7)(B). 553 B.R. at 460-61. In that case, the debtors filed bankruptcy in 2013 to discharge tax debts owed for the years 2001 to 2006 for which late returns were filed in 2008 and 2009. *Id.* at 460. After the debtors received a discharge in 2014, the Massachusetts Department of Revenue ("MDOR") attempted to collect the taxes and penalties in alleged violation of the discharge injunction. *Id.* at 461-62. When MDOR argued that the relevant "event" was a continuing failure to pay the tax, the bankruptcy court turned to the language of the Massachusetts statutes, noting that they "mandate[d] the imposition of penalties upon the expiration of . . . the

15

filing deadline and the payment deadline."[14] *Id.* at 465-66. According to the court, "[the law] specifies that [late-filing] penalties 'shall be added' when a return is not filed 'on or before its due date or within any extension of time'" and "[late-payment] penalties 'shall be added' where a tax is not paid 'on or before the date prescribed for payment.'" *Id.* Therefore, the court explained, "with respect to each of the Late Filed Penalties, the applicable transaction or event, for purposes of § 523(a)(7), was the expiration of the deadline to timely file the associated return . . . and the expiration of the deadline to timely pay the tax." *Id.* at 466 (internal quotation omitted).

Other courts that have examined tax penalties assessed under the IRC have utilized similar logic. In one case, the bankruptcy court, citing to § 6651 of the IRC,[15] found that the relevant "transaction or event" for purposes of failure-to-file penalties was the passage of the due date for the tax return. *Aikman v. IRS (In re Aikman)*, 554 B.R. 95, 99 (Bankr. W.D. Penn. 2016). In another case, the debtor obtained an extension of the deadline to file his 2008 tax returns from the usual date of April 15 to October 15. *Wilson*, 2016 WL 241416, at *1-2. Despite the extension, the debtor did not file his return until more than two years had passed. *Id.* Also citing to § 6651, the court found that "the mandatory language . . . indicates that penalties were required to be imposed when [the debtor] failed to file by the extended deadline" and that the relevant "transaction or event" was therefore the expiration of that deadline. *Id.* at *6. In a third case, the Tenth Circuit held that, based on the language of the IRC, it was the filing of a frivolous return that was the relevant "transaction or event" for a frivolous filing penalty. *Wilson v. United States*

---

[14] Further illustrating the ambiguity of § 523(a)(7)(B), the bankruptcy court in *McCarthy* indicated that the "relevant date [for purposes of § 523(a)(7)(B) was] the date the penalty was 'imposed.'" 553 B.R. at 466. The Court disagrees with this interpretation, because the statute places the emphasis on the date of the relevant "transaction or event."

[15] Under § 6651, in the event that a taxpayer fails to file a required return, "there shall be added to the amount required to be shown as tax on such return 5 percent of the amount of such tax . . . ." 26 U.S.C. § 6651. By virtue of § 6665(a), these penalties are automatically assessed and added to the amount of tax owed. *Id.* § 6665(a).

16

*(In re Wilson)*, BAP No. CO-08-092, 2009 U.S. App. LEXIS 12676, at *7-10 (10th Cir. June 12, 2009).[16]

In contrast to the IRC, penalties under the CTA are not automatically assessed against a violator. According to § 18a of the CTA, IDOR is required to hold a hearing following the initial seizure of cigarettes and "determine whether such . . . cigarettes, at the time of their seizure . . . were contraband cigarettes." 35 ILCS 130/18a. Because §§ 18b and 18c authorize the imposition of penalties only on individuals "possessing or having possessed *contraband cigarettes*," the hearing and determination under § 18a must necessarily come first. 35 ILCS 130/18b & 18c (emphasis added). Indeed, it appears that this is the hearing that Karim was initially contesting until he sent his email on May 1, 2017. Sections 18b and 18c additionally provide a limited exception for "licensed distributors and transporters," as defined in another section of the CTA, and whether an individual falls under these exceptions is another determination that must be made by the ALJ during the course of the administrative proceeding that necessarily precedes imposition of CTA penalties. 35 ILCS 130/18b & 18c; *see also* 35 ILCS 130/1 (defining "distributor" for purposes of the CTA); 35 ILCS 130/9c (defining "transporter" for purposes of the CTA).

In sum, penalties under the CTA are not structured like those under the IRC. If CTA penalties were statutorily similar to those imposed under the IRC, then the outcome in this case would be clear. It is fairly easy to determine the "transaction or event" that failure-to-file or failure-to-pay penalties are being "imposed with respect to," as those penalties are automatically imposed at the expiration of the period to file or pay. It is more difficult, however, to discern the "event" that free-standing penalties like those under the CTA are being "imposed with respect to." Given

---

[16] Section 6702 of the IRC, dealing with frivolous-filing penalties, also mandates the immediate imposition of a penalty in the event of a frivolous filing. *See* 26 U.S.C. § 6702.

the broad definition of "event," a number of plausible events could serve as the trigger for the lookback period of § 523(a)(7)(B).

Having analyzed the CTA, however, as well as the order entered by the ALJ, the Court finds that entry of the order of dismissal is the more plausible event with respect to which the penalties in this case were being imposed. The ALJ's order contains three dispositive findings: (1) that "[a]t the time of the seizure, [Karim] possessed 10,023 packages of cigarettes which were not stamped as required by the CTA" (i.e., cigarettes that were contraband); (2) that Karim "was not a licensed cigarette distributor, a licensed secondary distributor, or a licensed cigarette transporter of cigarettes"; and (3) that Karim "is liable for penalties, authorized by §§ [18b and 18c] of the CTA, in the amount of $248,975.00." (Docket No. 25, Ex. D). As §§ 18b and 18c allow for penalties to be imposed only on individuals who are found to have possessed contraband cigarettes, and who are not otherwise excepted for being licensed distributors or transporters, Karim had the continued opportunity, prior to entry of the dismissal order, to contest liability under the CTA by proving that the cigarettes were not contraband or that he was otherwise excepted. The seizure, standing alone, would therefore not be sufficient for IDOR to impose the contraband cigarette penalty at issue in this matter. Although §§ 18b and 18c, like the provisions of the IRC, provide a precise calculation of the penalties that can be assessed—and despite the fact that, in this matter, the statutory amounts match the penalties that were ultimately assessed against Karim—at all times prior to the entry of the dismissal order on June 13, 2017, the penalties could not have been assessed or imposed.

Thus, the Court holds that entry of the order of dismissal on June 13, 2017 is the relevant "event" for purposes of § 523(a)(7)(B). To decide otherwise would be to render the CTA's necessary administrative procedures mere formalities.

## CONCLUSION

For the foregoing reasons, the Court will deny Karim's motion for contempt. Because its debt is a nondischargeable tax penalty pursuant to § 523(a)(7)(B), IDOR did not violate the discharge injunction, and no sanctions will be imposed. A separate order will be entered consistent with this Memorandum Opinion.

Dated: **January 21, 2020**

ENTERED:

_____
Janet S. Baer
Bankruptcy Judge